VAJNER, PLAINTIFF-APPELLEE, *v.* ORANGE (VILLAGE), DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26371.   Decided July 5, 1963.

*Mr. Phillip C. Barragate*, of *Messrs. Barragate, Gottermeyer & Fahrenbach*, for plaintiff-appellee.

*Mr. Albert M. Heavilin*, solicitor, for defendant-appellant.

Kovachy, J.   This is an appeal on questions of law from a judgment entered in the Court of Common Pleas of Cuyahoga

County reversing a decision of the Council of the Village of Orange, which decision discharged Charles Vajner, appellee here, from the office of marshal and chief of police after a full and proper hearing on charges preferred by the mayor pursuant to Section 733.35, Revised Code.

The Village of Orange, appellant here, in its lone assignment of error claims that:

"The Common Pleas Court erred in substituting its judgment for that of the Council of the Village of Orange in determining that there was not sufficient cause for the removal of the Chief of Police, which judgment is contrary to law."

The salient facts are not in dispute.

The police of the Village had arrested Philip Lotenero and Arnold Lowe for breaking and entering the inhabited dwelling of George Russo. They had an unimpeachable case against them, including a confession. Lotenero also had admitted that he had broken into the homes of Elmer Jensick and Philip Geraci, residents of the Village of Orange, some months before. The chief and the sergeant of police then took Lotenero to a pawnshop where a stolen ring from the Geraci home was recovered, and they later proceeded to a garage where a gun, stolen from the Jensick home, was recovered. The chief of police was anxious to recover two mink stoles which had also been stolen from the Geraci home. Lotenero told the chief that he could get the fur pieces back if allowed to go unaccompanied by police officers. Upon such assurance, the chief of police freed both men from custody with instructions not to leave town and that he wanted "to talk to them again."

The breaking and entering of the Russo home took place on Sunday, August 13, 1961. The mayor of the village held a court session on Monday, August 14, at which time he learned that the prisoners had been released, and upon obtaining such information, ordered the sergeant of police to apprehend them immediately, which was accomplished the following day, and appropriate charges filed against them.

Section 733.35, Revised Code, reads as follows in parts pertinent here:

"The mayor of a municipal corporation shall have general supervision over each department and the officers provided for

in Title VII of the Revised Code. When the mayor has reason to believe that the head of a department or such officer has been guilty, in the performance of his official duty, or bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness, he shall immediately file with the legislative authority, except when the removal of such head of department or officer is otherwise provided for, written charges against such person, setting forth in detail a statement of such alleged guilt, and, at the same time, or as soon thereafter as possible, serve a true copy of such charges upon the person against whom they are made. * * *."

The mayor on August 21, 1961, filed written charges in conformity with said statute, which read as follows:

STATE OF OHIO )
) SS. CHARGES RE
COUNTY OF CUYAHOGA) CHARLES VAJNER,
CHIEF OF POLICE OF
THE VILLAGE OF
ORANGE, OHIO

"To the Council of the Village of Orange:

"I, Charles Mehlman, the duly elected, qualified and acting Mayor of the Village of Orange, have reason to believe that Charles Vajner, the Chief of Police of said Village, has been guilty of malfeasance, nonfeasance, misconduct in office and gross neglect of duty in the following particulars:

"1. The said Charles Vajner, as Chief of Police of said Village, without just cause, and with full knowledge of the facts set forth herein, released from the custody of the Police Department of said Village, and set free, Philip Lotenero and Arnold Lowe, who had been identified and taken into custody by said Village Police Department for, and later had confessed to, the crime of breaking and entering the residence of George Russo, 4599 Lander Road in said Village during the afternoon of the 13th day of August, 1961, all contrary to and in violation of the criminal statutes of Ohio.

"2. The said Charles Vajner, as such Chief of Police, released from custody the said Philip Lotenero and Arnold Lowe, not only knowing of the burglary of the home of George Russo, but also knowing that the said Philip Lotenero was sus-

pected of having been involved in the burglary of the home of Frank Geraci, 4489 Brainard Road in the Village of Orange, and the home of Elmer Jensick, 4019 Brainard Road in the Village of Orange; that said Philip Lotenero was awaiting Grand Jury action on the charge of burglary in the City of Solon, Ohio.

"WHEREFORE, I, Charles Mehlman, as the Mayor of the Village of Orange, request that a true copy of the above charges be personally served on the said Charles Vajner and a return of such service be filed with the Council of said Village as is provided for the return of service of summons in civil actions, and that said charges be heard under the authority of, and pursuant to Section 733.36 et seq., Revised Code.

(SIGNED)   CHAS. MEHLMAN

Mayor of the Village of Orange."

Upon a full and properly conducted hearing as required by Section 733.36, Revised Code, the Council sustained the charges by a four to two vote and the chief of police was removed from office. An appeal thereupon was made to the Court of Common Pleas under favor of Section 737.15, Revised Code, pertinent parts of which read:

"In case of the removal of a marshal or chief of police of a village an appeal may be had from the decision of the legislative authority to the court of common pleas *to determine the sufficiency of* the cause of removal. * * *." (Emphasis supplied.)

The marshal of a village designated chief of police is a public officer deriving his authority from the state for the purpose of enforcing the observance of the law. 38 Ohio Jurisprudence (2d), 566, Municipal Corporations, Section 184; 43 Ohio Jurisprudence (2d), 465, Police, Section 3.

The marshal, designated as chief of police, takes an oath of office to support the Constitution of the United States and the Constitution of this state and to faithfully, honestly, and impartially discharge the duties of his office.

Section 737.19, Revised Code, states that he has the duty to arrest any person in the act of committing any offense against the laws of the state, and *forthwith* bring such person before the

mayor or other competent authority for examination or trial.

Amended Section 2935.05, Revised Code, effective January 1, 1960, states:

"When a person named in Section 2935.03, Revised Code, has arrested a person without a warrant, *he shall, without unnecessary delay*, take the person arrested before a court or magistrate having jurisdiction of the offense, and *shall* file or cause to be filed an affidavit describing the offense for which the person was arrested. Such affidavit shall be filed either with the court or magistrate, or with the prosecuting attorney or other attorney charged by law with prosecution of crimes before such court or magistrate and if filed with such attorney he shall forthwith file with such court or magistrate a complaint, based on such affidavit." (Emphasis supplied.)

It is clear under the law that the power of a chief of police is *merely* to arrest and detain a person violating the law of the state until a warrant can be obtained, and such power exists only to the end that there may not be a failure of justice through the escape of criminals. 5 Ohio Jurisprudence (2d), 31, Arrest, Section 19. And his further duty under the law, when making an arrest without a warrant, is to take the person arrested *without unnecessary delay* before a court or magistrate having jurisdiction of the offense and there make or cause to be made a complaint stating the offense for which the person was arrested.

The chief of police in this case arrested two individuals for committing a serious offense against the state. The evidence against them was conclusive and the bringing of charges required no further investigation. These two persons were also involved in two previous cases of breaking and entering inhabited dwellings and the chief of police and his assistants did noteworthy police work in recovering some of the property stolen from those two homes. Releasing the prisoners, however, to obtain the return of the "two mink stoles" was highly improper and only seemed to serve the private purpose of accommodation to a resident of the Village.

It is well settled in Ohio that the state has general control of police matters and that police officers, by whomever appointed or elected, are regarded as public officers deriving their authority from the sovereignty *for the purpose of enforcing the observ-*

*ance of the law.* 43 Ohio Jurisprudence (2d), 465, Police, Section 3; 38 Ohio Jurisprudence (2d), 566, Municipal Corporations, Section 184. It is manifest, therefore, that the State of Ohio, as well as the Village of Orange, was interested in the chief of police fulfilling his duty under the law in this case. Breaking and entering an inhabited dwelling is a felony, dangerous in nature and vicious in character, and demands the strictest of law enforcement. The sole consideration of the chief of police, under the law, should have been to bring these men before the mayor under proper charges with due dispatch to facilitate their being bound over to the County Grand Jury. Letting them go free, for whatever purpose, under the circumstances of a clear case against them, was in total disregard of the law which he was sworn to uphold and a violation of the basic purpose for which a police force exists. Such action constituted malfeasance and misconduct tantamount to gross neglect of duty in office, and, as a consequence, we hold and conclude that the charges brought by the mayor before the Village Council and proven by clear and convincing evidence was *sufficient cause for his dismissal.*

*State, ex rel. John G. Rockwell v. State Board of Education and Others,* 213 Minn., 184, paragraph eight of the syllabus reads:

"8. To justify an order removing a public officer, substantial grounds specially relating to and affecting the administration of his office and directly affecting the rights and interests of the public must exist."

From the above it is patent that the trial court, contrary to law, substituted its judgment for that of the Council of the Village of Orange in determining that there was insufficient cause for the removal of the chief of police and thereby committed error in reversing the decision of the Village Council and reinstating the chief of police to his office.

The judgment is, accordingly, reversed and the decision of the Council of the Village of Orange removing the chief of police, Charles Vajner, from his office is affirmed.

SKEEL, C. J., CORRIGAN, J., concur.